IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

TYCER ROBINSON,                    )
                                   )
                Plaintiff,         )            4:11CV3001
                                   )
        v.                         )
                                   )
MICHAEL J. ASTRUE,                 )        MEMORANDUM OPINION
Commissioner of Social             )
Security Administration,           )
                                   )
                Defendant.         )
_____    )


        This matter is before the Court for review of the
decision of defendant Commissioner of the Social Security
Administration (Commissioner) denying Supplemental Security
Income (SSI) benefits to plaintiff Tycer Robinson (Robinson)
pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  Upon review, the
Court finds the Commissioner's decision is supported by
substantial evidence and should be affirmed.

## I.  BACKGROUND AND PROCEDURAL HISTORY

        Robinson was born on December 4, 1960 (Tr. 71).  He
completed a GED in 1980 (Tr. 100).  Robinson served in the United
States Marine Corps (Tr. 250).  In addition to his military
service, Robinson has been employed in assembly/manufacturing,
construction, garbage removal, general labor, janitorial, and
kitchen lines of work (Tr. 97-98).  Robinson married Caroline
Wallace in 2005; he has no dependent children (Tr. 72).

Robinson claims he has been disabled since July 23, 2007 (Tr. 32).  He alleges three major impairments:  depression, frost bite on fingers, and back problems (Tr. 64).

Robinson applied for SSI benefits on July 23, 2007 (Tr. 71).  In connection with his application, Robinson stated that he cooks every day and that he walks or runs once a week for recreation (Tr. 161-62).  Robinson has trouble sleeping and candidly stated, "I don't sleep I use Booze, Sleep Aids" (Tr. 163).  He stated he has anxiety reactions three times a week, but "medication make things better" (Tr. 164).

On August 27, 2007, Robinson was seen for an initial substance abuse assessment by Nancy Probst, BA, LADC, at Blue Valley Health Center as part of his parole, after having been released from prison six days earlier (Tr. 240).  Robinson stated that he "has had no real steady work program in several years and . . . it is all due to his substance abuse.  He has lost jobs too numerous to remember" (Tr. 241).  Robinson stated that he has "numerous DWI's" (Tr. 242).  Robinson stated he has "53 different entries on his [police] record.  He further acknowledges that all of these were under the influence of alcohol when they occurred" (Tr. 243).  Ms. Probst's diagnosis on Axis I was alcohol dependence, cannabis dependence, and cocaine dependence, with an Axis V score of 60 (Tr. 246).

-2-

On September 11, 2007, Robinson was seen for an initial mental health assessment by Jerry Oestmann, Ph.D., at Blue Valley Health Center.  Dr. Oestmann summarized the substance abuse evaluation by noting that Robinson "completed an RTC program while in prison and completed all 12 steps" and that "his drug of choice is alcohol" (Tr. 236).  Dr. Oestmann's diagnosis on Axis I was depressive disorder [not otherwise specified], anxiety disorder [not otherwise specified], alcohol dependence, cannabis dependence, and cocaine dependence, with a GAF of 50.  Dr. Oestmann wrote that Robinson "has had an extensive history of law violations and substance abuse problems throughout his lifetime. [Robinson] appears motivated and compliant for treatment and is wanting to change his life so that he will not go back to prison" (Tr. 237).

On September 19, 2007, Robinson saw for the first time D. C. Weldon, M.D., at the Wymore Medical Clinic, regarding blood in the stool, numbness in the left hip, cramping in the right flank, lesions, and toenail problems.  Dr. Weldon stated that Robinson has a history of a mental condition treated with antidepressants.  Dr. Weldon stated that Robinson "appears well." Dr. Weldon's assessment was "1) Hemorrhoids.  2) Parasthesia, left leg.  3) Mental illness condition not otherwise determined. 4) Smoking" (Tr. 219).

-3-

On October 1, 2007, Robinson was evaluated psychologically by a state agency examiner, Michael C. Renner, Ph.D.  Dr. Renner noted that Robinson stated that "he has longstanding difficulties with back problems and experiences severe back pain since he worked at a meat packing plant" (Tr. 251).  Robinson rated that pain at eight out of ten (Tr. 251). Robinson stated that "he has a long history of alcohol and drug dependence and abuse and he is currently smoking cigarettes, but has discontinued the use of alcohol, marijuana, and cocaine" (Tr. 251).  Robinson admitted to "significant aspects of depression" and "significant anxiety" (Tr. 252).  Dr. Renner's diagnosis on Axis I was pain disorder associated with both psychological factors and general medical condition, depressive disorder, not otherwise specified, generalized anxiety disorder, nicotine dependence, in partial remission, alcohol abuse, in full remission, cannabis abuse, in full remission, and cocaine abuse, in full remission.  In addition, Dr. Renner diagnosed personality disorder, not otherwise specified with paranoid avoidant borderline and antisocial characteristics, and history of ongoing significant back pain, with a GAF of 50 (Tr. 256).

Dr. Weldon also completed a Medical Report for Robinson, where he noted a "[t]wenty year history of low back pain without radiation, 8/10 severity" (Tr. 258).  In addition, Robinson reported "outpatient treatment seven years ago . . . for

-4-

frostbite of non-dominant left long ring and small fingers" (Tr. 259).  Dr. Weldon's impression of Robinson was: "1. Depression, rule out schizoaffective disorder, bipolar, or schizophrenia.  2. Hypertension, stage 2.  3. Treatment noncompliance.  4. Chronic back pain.  5. Chronic neck pain.  6. Possible hepatitis b infection.  7. Hematoschezia.  8. Veralgia paresthetica, left. 9. History of frostbite injury, left hand.  10. Tobacco dependence.  11. Alcohol abuse" (Tr. 260-61).

On October 23, 2007, Robinson had an initial therapy session at Blue Valley Mental Health Center.  Robinson stated that he has difficulty affording his psychiatric medications toward the end of each month.  He stated that he was depressed about not being able to find a job (Tr. 208).  On November 6, 2007, Robinson was seen again and stated that he was experiencing alcohol cravings and depression due to his lack of success at finding a job.  Robinson "no showed/no called" for his next two appointments (Tr. 207).

On October 24, 2007, a state agency reviewing medical consultant, Christopher Milne, Ph.D., completed a Mental RFC[1]

---

[1] RFC (Residual Functional Capacity) is the most a claimant can do despite physical and mental limitations caused by his impairments, including any related symptoms.  20 C.F.R. § 404.1545(a).  "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. 96-8p, 1996 WL 374184, at *2 (Soc. Sec. Admin. July 2, 1996).

-5-

Assessment of Robinson for his initial disability application
(Tr. 186).  Of the twenty mental activities listed, Robinson was
found to have no limitation in two activities, and he was
evaluated as "not significantly limited" in eleven activities and
"moderately limited" in seven activities (Tr. 186-87).

Dr. Milne stated that Robinson "has a history of drug
and alcohol abuse.  This is in full remission, per Dr. Renner's
report" (Tr. 188).  Dr. Milne stated that Robinson focused on
"his pain issues" and that he did have a "depressed mood and some
anxiety related to his pain issues" (*Id.*).  In addition, "His
substance abuse has been a factor with his legal and
interpersonal problems.  Currently, this does not appear to be
material" (*Id.*).  His statements concerning his limitations do
not appear to be totally credible. . . . He appears to be capable
of simple, unskilled work at this time" (*Id.*).

Dr. Milne also completed a Psychiatric Review Technique
for Robinson, stating that an RFC assessment was necessary
because of possible Affective Disorders (12.04), Anxiety-Related
Disorders (12.06), Somatoform Disorders (12.07), Personality
Disorders (12.08), and Substance Abuse Disorders (12.09) (Tr.
190).

Dr. Milne stated that Robinson had depressive disorder
not otherwise specified, but did not meet the diagnostic criteria
for Affective Disorders (12.04) (Tr. 193); had generalized

-6-

anxiety disorder, but did not meet the diagnostic criteria for
Anxiety-Related Disorders (12.06) (Tr. 195); had pain disorder,
associated with psychological factors, general medical condition,
but did not meet the diagnostic criteria for Somatoform Disorders
(12.07) (Tr. 196); had personality disorder, not otherwise
specified, but did not meet the diagnostic criteria for
Personality Disorders (12.08) (Tr. 197); and had alcohol abuse,
cannabis abuse, cocaine abuse, all in full remission, but did not
meet the diagnostic criteria for Substance Addiction Disorders
(12.09) (Tr. 198).

Dr. Milne found that Robinson was mildly limited as to
a restriction of activities of daily living, moderately limited
as to difficulties in maintaining social functioning, moderately
limited as to difficulties in maintaining concentration,
persistence, and pace, and had had one or two episodes of
decompensation (Tr. 200). However, Robinson did not meet any of
the "C" criteria of the listings.

Also on October 24, 2007, Glenn D. Knosp, M.D., a state
agency reviewing physician, completed a Physical Review Other
Than RFC of Robinson. Dr. Knosp noted that "A recent CE showed
no severe abnormality, no atrophy in extremities, no lesions or
abnormality on hands or fingers, no vascular problems, normal
gait, good range of motion" (Tr. 189). Dr. Knosp noted that "he
did not complain of any severe physical conditions, or being in
any pain on an evaluation at Blue Valley Mental Health Center on

-7-

8/27/07" (*Id.*).  Dr. Knosp concluded, "There does not appear to be a severe physical condition at this time" (*Id.*).

On October 24, 2007, the Commissioner denied Robinson's initial SSI benefits claim.

On December 14, 2007, Jerry Reed, M.D., also a state agency reviewing physician, completed a second Physical RFC Assessment for Robinson for the reconsideration of his disability application.  Dr. Reed wrote that "the Other Than RFC of 10/24/07 is affirmed as written" (Tr. 268).

On February 13, 2008, Linda Schmechel, Ph.D., a state agency reviewing clinician, completed a second Psychiatric Review Technique for Robinson.  Dr. Schmechel wrote, "I have reviewed all of the evidence in file and the PRTF/MRFC of 10/24/07 is affirmed as written" (Tr.269).  On February 15, 2008, Robinson's reconsideration claim was also denied (Tr. 54).

On April 11, 2008, Robinson applied for an appellate hearing with an administrative law judge for his claim (Tr. 85).  In his application, he stated that he was working at a battery factory for 12 hours a day, two days a week (Tr. 92).  After his shifts, his "pain is worse" and he takes "six extra pills to help with the pain.  Unfortunately, I have run out of pills, so to help with the pain, I sometimes drink alcohol" (Tr. 92).

On June 9, 2008, Robinson was admitted to Bryan LGH Medical Center in acute renal failure (Tr. 173).  He had been incarcerated due to driving under the influence and was given a

-8-

combination of medications at the jail for combativeness that caused the renal failure (Tr. 173).  After stabilization, he was discharged back to the jail (Tr. 173).

Robinson saw Dr. Weldon on September 10, 2008.  Dr. Weldon's notes reflect that Robinson stated that he drinks "occasional 2 beers, 2 drinks bourbon" (Tr. 167).  Dr. Weldon's assessment was "1) Alcoholism relapse.  2) Pancreatitis.  3) Liver disease ? HPV, alcohol, or other.  4) Cramps right hand" (*Id.*).  Dr. Weldon's plan for Robinson was:  "Encouraged alcohol abstinence, returning to BVMH.  Noted DWI incarceration 6/08" (*Id.*).

Robinson saw Dr. Weldon again on September 12, 2008.  Dr. Weldon noted, "[Follow-up] alcoholism, liver disease, pancreatitis.  Feeling better. . . . States one beer today, one yesterday.  No alcoholism reported parents. . . . Encouraged alcohol abstinence" (Tr. 167).  Dr. Weldon's assessment was "Alcoholism/alcoholic liver disease" (*Id.*).

A hearing before an administrative law judge ("ALJ"), Alexander Weir III, took place on October 23, 2008, in Lincoln, Nebraska, to review Robinson's SSI benefits claim.

Psychiatrist Walter Lewin, M.D., testified at the hearing, via telephone, as a medical expert (Tr. 280).  Dr. Lewin based his testimony on the record before him, repeating many of the findings of the October 1, 2007 report by Dr. Renner.  Dr.

-9-

Lewin stated that he was in agreement with Dr. Renner (Tr. 281). Dr. Lewin affirmed that it was his testimony that

> during that time when [Robinson] was not using alcohol or controlled substances according to their [Dr. Renner's and Blue Valley's] opinions he basically met the listing of impairments or came close to it, and if he didn't meet the listings he had marked limitations in several very important vocationally relevant sections.

(Tr. 284-85).

Dr. Lewin also affirmed that Robinson has "a history of alcoholism and drug abuse," but that "the most recent reports are that this is in full remission" and that "these progress notes give no evidence of recent substance or alcohol abuse" (Tr. 283). The ALJ then stated that more recent records, which had not been sent to Dr. Lewin prior to the hearing, indicated that Robinson had been "arrested for DUI" and a "history of alcohol use" (Tr. 284). The ALJ stated, "So that sounds to me like he's still abusing alcohol" (*Id.*). Dr. Lewin replied, "Sounds that way to me too, sir. . . . That would make the DA&A [drug addiction and alcoholism] material then" (*Id.*). Robinson's attorney asked Dr. Lewin several questions along the same lines, ultimately asking, "And so if [Robinson]'s not -- even if he's not using he has these problems?" (Tr. 285). Dr. Lewin replied, "This is correct" (*Id.*).

Robinson testified at the hearing that the last time he worked was in "February . . . of this year" at the battery assembly for twelve hours a day, twice a week (Tr. 286-87). Before that, he worked full time for six to eight months assembling lawn mowers (Tr. 287) until he went back to prison for a parole violation (Tr. 295). Robinson stated that he had held other jobs as well (Tr. 287).

Robinson testified that he presently drinks alcohol three times a week and that he has been doing that for over ten years. However, he had slowed down a lot "last month" [September 2007] (Tr. 288-89). Then Robinson testified that he had been drinking "maybe a 12-pack a day" "every day" for a period of three years before he slowed down [September 2004 - 2007] (Tr. 289). However, Robinson also testified that he just got out of jail in August 2007 (Tr. 290).

Robinson affirmed that he told Dr. Renner "about all the drinking and drugs" he was taking. He also affirmed that he told Dr. Renner that he had stopped drinking when actually, "I just slowed down" (Tr. 293). Robinson was "pretty sure" that he was clean and sober when he saw Dr. Renner in October 2007 (Tr. 296-97). However, after a few months of sobriety he started drinking again (Tr. 297). Conversely, Robinson testified that he had used crack and marijuana, maybe two times a month, as recently as four months before the date of the hearing [June 2007] (Tr. 289).

-11-

Robinson testified that his hands cramp up since he had frostbite and that "my back bothers me" (Tr. 293-94).

Next, vocational expert Steven Kuhn testified that Robinson had past relevant work as an assembler, construction cleanup worker, garbage collector, hand packer, and kitchen worker (Tr. 304).

The ALJ posed the following hypothetical to the vocational expert at the hearing:

> I'd like you to assume that each of the hypothetical persons I describe has the age, education, work background of the claimant. [INAUDIBLE] have some limitations that I describe. I've got a person, number one, . . . has no exertional limitations. Has a mild limitation in grip strength. Could this person do any of the past relevant work of this claimant?

(Tr. 305). Based on the hypothetical, the vocational expert answered that the person could perform all of the jobs listed as past relevant work (*Id.*).

The ALJ posed a second hypothetical to the vocational expert at the hearing:

> Hypothetical person number two has the same limitations I described for hypothetical person number one. In addition to which this person has a moderate limitation in dealing with complex tasks and a moderate limitation in attention and concentration and a moderate limitation in dealing with the general public, coworkers, and supervisors. . . . Could this

-12-

> person do the past relevant work of
> this claimant?

(Tr. 305).  Based on the hypothetical, the vocational expert
answered that the person could perform all of the jobs listed as
past relevant work (Tr. 306).

Robinson's attorney also asked a hypothetical question
of the vocational expert,

> If you used marked degree of
> limitation in the areas of
> concentration and attention, . . .
> [a]nd also marked level of meeting
> what I'll call the demands of a
> normal workweek. . . . And then
> also a marked degree of limitation
> in dealing with the public.  Now,
> with that degree of limitation
> would he be able to perform his
> prior relevant work?

(Tr. 306).  The vocational expert answered, "It is my opinion he
would not be able to perform past relevant work" (*Id.*).
Robinson's attorney then asked, "Any other type of work
activity?" (*Id.*).  The vocational expert answered, "No" (*Id.*).

On January 30, 2009, the ALJ issued an opinion
affirming the denial of Robinson's SSI benefits claim.  (Tr. 10-
23).  The ALJ evaluated Robinson's claim under the five-step
sequential process.  *See* 20 C.F.R. § 416.920(a).  In addition,
the ALJ also included an evaluation of material drug addiction or
alcoholism.  *See* 20 C.F.R. § 416.935(b)(2).

-13-

At step one, the ALJ found that Robinson had not engaged in substantial gainful activity since August 24, 2007, the date of his application.

At step two, the ALJ found that Robinson's impairments, drug dependence, alcoholism, and mental depression, were severe. However, the ALJ also found that Robinson did not have any "medically determinable physical impairments that have lasted or could reasonably be expected to last for at least 12 continuous months other than obesity," and that the obesity did not cause significant limitations (Tr. 13).

At step three, the ALJ found that Robinson's "mental impairments, including his alcoholism and substance use disorder, meet the criteria of sections 12.04 and 12.09" of the listings found in 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 18).  The ALJ found that "The 'paragraph A' criteria of listing 12.09 is satisfied because the claimant has a documented history of having experienced behavioral and disturbance of mood changes associated with the regular use of alcohol that affect the claimant's central nervous system" (Tr. 18).  In addition, the ALJ found that

> The 'paragraph A' criteria of listing 12.04 is satisfied because the claimant experiences sleep disturbance, psychomotor retardation, paranoid thinking, and concentration deficits.  The evidence shows that the claimant's mental impairments provide moderate limitations in his daily living

-14-

                    activities, marked limitations in
                    his social functioning and marked
                    limitations in his ability to
                    maintain concentration, persistence
                    and pace.  There is evidence that
                    the claimant has experienced some
                    episodes of decompensation of
                    extended duration.  These appear to
                    be alcohol and/or drug related.

(Tr. 18).  The ALJ concluded that because Robinson "has

impairments that meet the criteria of listing 12.04 and 12.09 he

is disabled" (Tr. 18).

          Next, the ALJ found that "Drug dependence and

alcoholism are material to the determination of the claimant's

disability.  If the claimant were to cease drinking and taking

drugs he would not have a severe impairment and would not be

disabled" (Tr. 18).  In reviewing the record, the ALJ found that

Robinson was not clean and sober when he was seen by Dr. Renner

in October 2007, but rather that Robinson had only cut down on

his drinking.  The ALJ wrote, "On that basis, I reject that

portion of Dr. Renner's report" (Tr. 19).  In addition, ALJ

rejected "Dr. Milne's opinion since his opinion was given in

reliance upon Dr. Renner's report and diagnosis, which I find

less than credible" (Tr. 19).  "Further, neither Dr. Renner nor

Dr. Milne, a non-examining physician, had the benefit of the

entire record before rendering their opinions" (Tr. 19).  In

addition, "Both were under the impression that the claimant's

alcohol dependence was in remission when it was not" (Tr. 21).

The ALJ also found that absent substance use, Robinson would have only mild limitations or, in one area, no limitations at all in "the four broad functional areas set out in the disability regulations," known as the "paragraph B" criteria, because the evidence shows that his problems in these areas stemmed from alcohol use (Tr. 21).

With regard to physical ailments, the ALJ found that "absent alcohol abuse, the claimant has no severe physical impairment that would preclude his ability to perform basic work activity" (Tr. 20).  The ALJ discounted Dr. Weldon's finding that Robinson had chronic back pain because the finding was based entirely on Robinson's subjective complaints, was not supported by observations of any limitations in movement, and was not supported by objective medical evidence.  Instead, the ALJ found "substantial support for Dr. Knosp's conclusion that the claimant does not have a severe physical impairment" (*Id.*).  Moreover, "[T]he conclusion that, if substance use was stopped the claimant would not have an impairment or combination of impairments that significantly limits his ability to perform basic work activity is supported by the evidence taken as a whole" (Tr. 21).

In his opinion, the ALJ did not explicitly "determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work" (Tr. 12), but the finding of lack of either mental disability (given the presence of alcoholism) or physical disability at

-16-

least implies the capacity to perform past relevant work.  The
second hypothetical to the vocational expert supports this
conclusion as well.  The ALJ then had no need to determine at
step five "whether the claimant is able to do any other work
considering his residual functional capacity, age, education, and
work experience" (*Id.*).

In summary,

> After careful consideration of all
> the evidence, the undersigned
> Administrative Law Judge concludes
> that claimant is under a
> disability, but that a substance
> use disorder is a contributing
> factor material to the
> determination of disability.
> Accordingly, the claimant has not
> been disabled under the Social
> Security Act at any time from the
> date the application was filed
> through the date of this decision.

(Tr. 11).

On November 8, 2010, the Appeals Council declined
Robinson's request for review; thus, the ALJ's decision is now
the final decision of the Commissioner.  Robinson timely filed a
complaint with the United States District Court for the District
of Nebraska on January 5, 2011.

## II.  DISCUSSION

### A.  Standard of Review

When reviewing an ALJ's decision, the Court "must
determine 'whether the ALJ's decision complies with the relevant

legal requirements and is supported by substantial evidence in the record as a whole.'"  *Martise v. Astrue*, 641 F.3d 909, 920 (8th Cir. 2011) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)).  "Substantial evidence" is:

> relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Substantial evidence on the record as a whole, however, requires a more scrutinizing analysis.  In the review of an administrative decision, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.  Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

*Id.* at 920-21.

"'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'"  *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).  The Court may not reverse the ALJ's decision "merely because [the Court] would have come to a different conclusion."  *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011)(citation omitted).  The claimant "bears the burden of proving disability."  *Id.* at 615.

**B.    Substantial Evidence Exists Supporting the ALJ's Decision.**

      **1.    Severe Impairment and Substance Abuse.**

        Robinson states as his first argument, "The ALJ erred by finding that the plaintiff did not have a severe impairment" (Plaintiff's Brief, Filing No. 16, at 5).  However, the ALJ did find that Robinson had a severe impairment.  As noted above, at step two, the ALJ found that Robinson's impairments, drug dependence, alcoholism, and mental depression, were severe.  In addition, at step three, the ALJ concluded that because Robinson "has impairments that meet the criteria of listing 12.04 and 12.09 he is disabled" (Tr. 18).  Robinson's real complaint with the ALJ seems to encompass the ALJ's analysis of Robinson's drug and alcohol use and its effect on his disability claim.

        A person will not be considered "disabled" under Title XVI of the Social Security Act "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J).  The procedure for determining whether a claimant's alcoholism or drug use is a contributing factor is stated in 20 C.F.R. § 416.935.  First, under this regulation, the Commissioner (or, here, the ALJ) must determine "whether we would still find you disabled if you stopped using drugs or alcohol."  20 CFR § 416.935(b)(1).  To do this, the ALJ must "evaluate which of your current physical and mental

-19-

limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling."  20 CFR § 416.935(b)(2).

Then, "If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability," and thus the claimant would not be considered disabled and would not receive SSI benefits.  20 CFR § 416.935(b)(3).  The claimant "carries the burden of proving [his] substance abuse is not a contributing factor material to the claimed disability." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

The ALJ in this case followed the procedure directed in 20 C.F.R. § 404.1535 to determine whether Robinson's substance abuse was a contributing factor material to the determination of his disability.  As noted above, the ALJ determined that no physical limitations, and, at worst, only mild limitations regarding the paragraph B criteria, would exist absent Robinson's substance abuse.  Consequently, the ALJ determined Robinson was not disabled when he was not abusing alcohol.

The Eighth Circuit reviewed a similar case in *Vester v. Barnhart*, 416 F.3d 886 (8th Cir. 2005).  There, the SSI claimant was diagnosed with "bipolar disorder and major depression, along with a probable personality disorder, placing her 'Global

-20-

Assessment of Functioning' level at 55 to 60 on a scale of 0 to 100." *Vester*, 416 F.3d at 889.  Like Robinson, Vester went through a "period of sobriety during which she was doing 'quite well . . . .'" *Vester*, 416 F.3d at 889.  Vester testified that her last ten years included a streak of sobriety as long as three years, [but] she also sustained two convictions for driving while intoxicated during that period." *Vester*, 416 F.3d at 889.

In affirming the denial of benefits, the Eighth Circuit noted, "While it is true that [d]etermining whether a claimant would still be disabled if he or she stopped drinking is, of course, simpler if the claimant actually has stopped, in this case Vester had been sober only five months at the time of her 2001 hearing before the ALJ, and she admitted that her sobriety was 'periodic.'" *Vester*, 416 F.3d at 890 (citation omitted). The Eighth Circuit also took note of Vester's "improved condition during other periods of sobriety" when she was able to attend classes and do volunteer work.  *Vester*, 416 F.3d at 890.

Like Vester, Robinson, too, was able to function in a more productive way while sober, by holding down a job for a matter of months.  As the ALJ notes, Robinson "testified that while incarcerated, he worked in the kitchen as a kitchen helper. Further, although not substantial gainful activity, the claimant testified that he pursued several employment opportunities and worked at various temporary jobs . . . . Moreover, he admitted

-21-

that he lost every job he had due to alcohol abuse" (Tr. 21).
The ALJ noted that Robinson "related that he has been in car
accidents [and] fights, . . . has had numerous DWI's, and he has
lost numerous jobs due to substance abuse" (Tr. 20).  Thus,
*Vester* provides affirmation for the ALJ's denial of benefits to
Robinson.

### 2.  Opinions of Dr. Renner, Dr. Milne, and Dr. Lewin.

Robinson questions the ALJ's rejection of the opinions
of Dr. Renner and Dr. Milne, which was based on the impression
that Robinson was not drinking at the time of Dr. Renner's
evaluation in October 2007.  The Court finds substantial evidence
in the record to support the ALJ's conclusion that Robinson had
merely cut down on his drinking at that time.

For example, as noted above, Robinson testified that he
presently drinks alcohol three times a week and that he has been
doing that for over ten years.  However, he had slowed down a lot
"last month" [September 2007] (Tr. 288-89).  Then Robinson
testified that he had been drinking "maybe a 12-pack a day"
"every day" for a period of three years before he slowed down
[September 2004 - 2007] (Tr. 289).  Robinson did not indicate how
much he was drinking during this "slow down" period.

He also brought into question his own credibility when
he affirmed that he told Dr. Renner that he had stopped drinking,
when actually, "I just slowed down" (Tr. 293).  Robinson
testified that he had used crack and marijuana, maybe two times a

-22-

month, as recently as four months before the date of the hearing
[June 2007] (Tr. 289).

Robinson also claims that the ALJ did not properly give
credence to the testimony of Dr. Lewin. Robinson acknowledges
that Dr. Lewin had stated that if Robinson were still drinking,
this would be material to the issue of disability. But Robinson
then states, "In response to additional questioning, Dr. Lewin
testified that even if Plaintiff was not drinking alcohol or
using controlled substances he would still be disabled" (Filing
No. 16, at 8). However, this denies the fact that Dr. Lewin was
basing his opinion on Dr. Renner's report, which, again, was
based on Robinson's alleged sobriety. Given the substantial
evidence, provided by Robinson himself, that he was not, in fact,
sober, the opinions of the medical staff who were explicitly
relying on that fact are reasonably called into the question by
the ALJ. By his own testimony, Robinson plainly did not meet
"the burden of proving [his] substance abuse is not a
contributing factor material to the claimed disability." *Estes*,
275 F.3d at 725.

Robinson claims that the ALJ should not have rejected
Dr. Renner's opinion, to the extent that it lacked objective
findings (Filing No. 16, at 10). In support of this claim,
Robinson cites *Averbach v. Astrue*, 731 F.Supp. 2d 977 (C.D. Cal.
2010), where the district court wrote, "The report of a
psychiatrist should not be rejected simply because of the

-23-

relative imprecision of the psychiatric methodology or the absence of substantial documentation, *unless there are other reasons to question the diagnostic technique*." *Averbach*, 731 F.Supp. 2d at 986 (emphasis added). However, Robinson ignores the last clause of the quote: here, there were other reasons to question the diagnostic technique. The ALJ found that Dr. Renner drew his conclusions based on a faulty premise, that is, that Robinson had stopped drinking at the time of the interview.

The medical evidence in the record as a whole contradicts the opinions of Dr. Renner, Dr. Milne, and Dr. Lewin that Robinson was disabled even when Robinson was not under the influence of drugs. The Court finds that the evidence in the record as a whole does support the ALJ's finding that Robinson's alcoholism was "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C.A. § 1382c(a)(3)(J).

### 3. **Development of the Record**.

Robinson claims that the ALJ did not fully develop the record because the ALJ did not contact any of Robinson's examining clinicians for further information. Robinson claims that the ALJ rejected medical opinions without having "[other] medical opinions to support the rejection" (Filing No. 16 at 12). Instead, Robinson claims, "the ALJ chose to 'play doctor'" (*Id.*).

-24-

The Eighth Circuit addressed this issue in *Vester*, stating,

> We have some doubt whether Vester's ability to work in the absence of alcoholism is a "medical question" comparable to the traditional determination of residual functional capacity. Put simply, if an ALJ is presented with evidence that a claimant has demonstrated the ability to work during periods of sobriety, it seems within the ken of the ALJ to make a factual finding that the claimant is able to work when she is not abusing alcohol.  This sort of judgment, based largely on historical facts, strikes us as different in kind from that required when a claimant presents a set of medical problems, and the ALJ must make a predictive judgment as to the claimant's ability to work in light of a given medical condition.

*Vester*, 416 F.3d at 891.  The Eighth Circuit concluded, "After considering all of the evidence under the substantial evidence standard, we are satisfied that the ALJ . . . untangled Ms. Vester's history of alcoholism and mental illness with sufficient clarity and detail to support the finding that she is not disabled apart from her alcoholism."  *Vester*, 416 F.3d at 891.

The Eighth Circuit noted that the "ALJ followed the analytical framework prescribed by the regulations, made detailed factual findings about Vester's depression and alcoholism, and supported his findings with references to the record."  *Vester*, 416 F.3d at 892.  Therefore, "We conclude that a reasonable

-25-

person considering the record as a whole could reach the conclusion adopted by the ALJ." *Vester*, 416 F.3d at 892.

Likewise, here, rather than "playing doctor" on a medical issue, the ALJ made a finding of fact, largely based on Robinson's own testimony and statements to clinicians, that Robinson is able to work when sober, but loses jobs, drives while intoxicated, and has significant social limitations when he is drinking. The Court finds that "the ALJ's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 920 (8th Cir. 2011).

## III.   CONCLUSION

Substantial evidence in the record as a whole supports the ALJ's determination that Robinson was not disabled within the meaning of the Social Security Act due to his material substance abuse, and the ALJ's decision complies with the relevant law. The Commissioner's denial of Robinson's SSI benefits claim will be affirmed. A separate order will be entered in accordance with this memorandum opinion.

DATED this 11th day of October, 2011.

BY THE COURT:

/s/ Lyle E. Strom

_____

LYLE E. STROM, Senior Judge
United States District Court

-26-